ANN CRAWFORD McCLURE, Chief Justice
This appeal is from a judgment terminating the parental rights of Appellant, R.E.G., to his son, R.A.G. We affirm.
FACTUAL SUMMARY
Appellant and G.B. are the parents of R.A.G. Appellant and G.B. were arrested for trafficking drugs from Mexico into Texas, and both of them were incarcerated for that offense. R.A.G. was born in 2007 while G.B. was incarcerated. R.A.G. was placed with Appellant's mother, M.G., shortly after he was born and he lived with her for about a year and a half until G.B. was released from incarceration.[1] Appellant was released from incarceration in 2012, but he was deported to Mexico and cannot legally re-enter the United States. The record reflects that Appellant has never had any contact or relationship with R.A.G. during the child's life, and he has not provided any financial support.
The Texas Department of Family and Protective Services removed R.A.G. and two other children from G.B.'s care after receiving a report that G.B., on December *649 12, 2014, left the children unattended in a running vehicle while she went into a store where she was arrested for shoplifting. She was also charged with three counts of endangering a child, a state jail felony.[2] During the subsequent investigation, G.B. tested positive for cocaine. On May 8, 2015, the Department filed a petition requesting an order for G.B. to participate in services, and the trial court entered an order granting the petition. G.B. did not, however, participate in any services, including inpatient drug rehabilitation. The Department placed R.A.G. with his maternal aunt, S.O., and her husband on May 16, 2015.
On July 13, 2015, the Department filed a petition to terminate the parental rights of G.B. and Appellant. The petition alleged that Appellant's location was unknown and the Department would request service in the event it located him. Over the next several months, the Department made efforts to contact Appellant regarding R.A.G.'s removal from G.B.'s care and to inform him that the child was in the custody of the Department. Rachel Flores, a conservatorship supervisor, contacted Appellant's mother, M.G., and sister in November or December 2015 by telephone through a number the Department had on file for Appellant's mother. Flores told them that it was important they inform Appellant that R.A.G. was in the Department's custody and that Appellant needed to contact the Department. Flores gave them her telephone number so that Appellant could contact her. M.G. and Appellant's sister told Flores that he was working in Mexico but they did not know the location. Appellant's sister, G.A., testified at trial that she and her mother have had contact with Appellant by telephone and Facebook since he was released from prison in 2012. G.A. admitted that she, her mother, and another sister learned in November 2015 that R.A.G. was in the Department's custody when her mother and sister spoke to a supervisor from the Department about the case. Further, she testified that she and her family informed Appellant about the case concerning R.A.G. Despite having this knowledge, Appellant did not contact the Department about R.A.G. or the case.
A caseworker, Shelbi Talavera, testified that she did not have a working telephone number for Appellant or his mother at the time she was the caseworker. Talavera sent a letter to Appellant at his last known address and also sent letters to his mother's address in New Mexico. The letters sent to M.G.'s address were not returned, but G.A. denied ever receiving any letters from the Department. The Department conducted a due diligence search for Appellant but could not locate him. On April 12, 2016, the trial court appointed an attorney ad litem to represent Appellant and entered an order for substituted service. Appellant subsequently filed a general denial, and he attended the trial by telephone.
S.O. testified at trial that she has had a relationship with R.A.G. since he was about one and a half years of age. R.A.G. has lived with S.O. and her husband since May 16, 2015. During the time R.A.G. has lived with them, Appellant and his family have not had any contact with R.A.G. R. A. G. did not know Appellant, and did not know Appellant was his father until S.O. told him. S.O. and her husband plan to adopt R.A.G.
The trial court terminated Appellant's parental rights, finding by clear and convincing evidence that he:
(1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger *650 the physical or emotional well-being of the child, pursuant to § 161.001(b)(1)(D), Texas Family Code ;
(2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child, pursuant to § 161.001(b)(1)(E),
(3) constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months and: (1) the Department has made reasonable efforts to return the child to the father; (2) the father has not regularly visited or maintained significant contact with the child; and (3) the father has demonstrated an inability to provide the child with a safe environment, pursuant to § 161.001(b)(1)(N), Texas Family Code ; and
(4) failed to comply with the provisions of a court order that specifically established the actions necessary for the father to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child, pursuant to § 161.00(b)(l)(O), Texas Family Code.[3] The trial court also found that termination was in the child's best interest.
PREDICATE TERMINATION GROUNDS
In Issues One through Four, Appellant challenges the legal and factual sufficiency of the evidence supporting the four predicate termination grounds found by the trial court. A parent's rights may be involuntarily terminated through proceedings brought under Section 161.001 of the Texas Family Code. See TEX.FAM.CODE ANN. § 161.001 (West Supp. 2016). Under this provision, the petitioner must (1) establish one or more of the statutory acts or omissions enumerated as grounds for termination, and (2) prove that termination is in the best interest of the children. See id . Both elements must be established and termination may not be based solely on the best interest of the children as determined by the trier of fact. Texas Department of Human Services v. Boyd , 727 S.W.2d 531, 533 (Tex. 1987) ; In the Interest of A.B.B. , 482 S.W.3d 135, 138 (Tex.App.-El Paso 2015, no pet.).
Sufficiency Standards
When reviewing the legal sufficiency of the evidence in a termination case, we consider all of the evidence in the light most favorable to the trial court's finding, "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." In the Interest of J.P.B., 180 S.W.3d 570, 573 (Tex. 2005), quoting In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002) ; see In re J.O.A., 283 S.W.3d 336, 344 (Tex. 2009). We give deference to the fact finder's conclusions, indulge every reasonable inference from the evidence in favor of that finding, and presume the fact finder resolved any disputed facts in favor of its findings, so long as a reasonable fact finder could do so. In the Interest of J.P.B ., 180 S.W.3d at 573. We disregard any evidence *651 that a reasonable fact finder could have disbelieved, or found to have been incredible, but we do not disregard undisputed facts. In re J.P.B ., 180 S.W.3d at 573 ; In re J.F.C ., 96 S.W.3d at 266.
In a factual sufficiency review, the inquiry is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the challenge findings. See In re J.F.C ., 96 S.W.3d at 266. We must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. In re J.F.C. , 96 S.W.3d at 266. A court of appeals should consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. Id. If the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. Id.
Section 161.001(b)(1)(E)
In Issue Two, Appellant argues that the evidence is legally and factually insufficient because he did not deliberately place the child in conditions or surroundings to harm the child's physical or emotional health, and he had no knowledge of G.B.'s actions. Section 161.001(b) (1)(E) authorizes termination if the parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. TEX.FAM.CODE ANN. § 161.001(b)(1)(E). The relevant inquiry under this subsection is whether there is evidence that a parent's acts, omissions, or failures to act endangered the child's physical or emotional well-being. See Jordan v. Dossey , 325 S.W.3d 700, 723 (Tex.App.-Houston [1st Dist.] 2010, pet. denied) ; In re J.T.G., 121 S.W.3d 117, 125 (Tex.App.-Fort Worth 2003, no pet.). In this context, "endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. Jordan , 325 S.W.3d at 723 ; see In re M.C. , 917 S.W.2d 268, 269 (Tex. 1996). "Endanger" means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, but it is not necessary that the conduct be directed at the child or that the child actually suffers injury. In re E.N.C. , 384 S.W.3d 796, 803 (Tex. 2012) ; Jordan , 325 S.W.3d at 723. The endangerment must be the result of a voluntary, deliberate, and conscious course of conduct by the parent rather than a single act or omission. See Jordan , 325 S.W.3d at 723 ; In re J.T.G., 121 S.W.3d at 125.
Conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. Jordan , 325 S.W.3d at 723 ; In re R.W ., 129 S.W.3d 732, 739 (Tex.App.-Fort Worth 2004, pet. denied). Deportation of a parent, standing alone, does not constitute an endangering course of conduct, but it may be relevant to the issue of endangerment if it exposes the child to instability. See In re E.N.C. , 384 S.W.3d at 805. The commission of criminal conduct by a parent may support termination under Section 161.001(b)(1)(E) because it exposes the child to the possibility that the parent may be imprisoned. See In re M.C. , 482 S.W.3d 675, 685 (Tex.App.-Texarkana 2016, pet. denied) ; In re A.W.T. , 61 S.W.3d 87, 89 (Tex.App.-Amarillo 2001, no pet.) (intentional criminal activity which exposes the parent to incarceration is relevant evidence tending to establish a course of conduct endangering the emotional and physical well-being of the child). While criminal violations and incarceration are not enough to show endangerment by themselves, they can be evidence of endangerment *652 if shown to be part of a course of conduct that is endangering to the child. Texas Department of Human Services v. Boyd , 727 S.W.2d 531, 533-34 (Tex. 1987) ; Perez v. Texas Department of Protective and Regulatory Services , 148 S.W.3d 427, 436 (Tex.App.-El Paso 2004, no pet.). Likewise, a fact finder may infer that a parent's lack of contact with the child and absence from the child's life endangered the child's emotional well-being. See In re U.P. , 105 S.W.3d 222, 236 (Tex.App.-Houston [14th Dist.] 2003, pet. denied).
The evidence showed that Appellant engaged in drug trafficking with G.B. while she was pregnant with R.A.G., and they were both arrested. As a result, Appellant was incarcerated for the first four years of R.A.G.'s life and R.A.G. lived with Appellant's mother for about a year and a half until G.B. was released from custody. Following his release from prison, Appellant was deported to Mexico. It is understandable that Appellant, as a result of his deportation, has been unable to visit with R.A.G. in person in the United States, but the evidence showed that Appellant has not had any other type of contact with R.A.G. during the years following his deportation. According to Appellant's sister, G.A., Appellant is a college professor in Mexico, and he has maintained the same telephone number and Facebook account since his release from prison in 2012, yet he made no effort to contact R.A.G. even after he learned that the child had been removed from G.B.'s care. Appellant has been absent from R.A.G.'s life to the extent that R.A.G. did not even know that Appellant is his father. While incarceration and deportation are not sufficient, standing alone, to support a finding under Section 161.001(b)(1)(E), these facts are part of Appellant's overall course of conduct. We conclude that the evidence is legally and factually sufficient to establish a firm conviction or belief in the mind of the trier of fact that Appellant engaged in conduct that endangered R.A.G.'s physical or emotional well-being under Section 161.001(b)(1)(E). See Walker v. Texas Department of Family and Protective Services , 312 S.W.3d 608, 617-18 (Tex.App.-Houston [1st Dist.] 2009, pet. denied) ; In re U.P. , 105 S.W.3d at 236. Issue Two is overruled. Because the evidence is sufficient to support one of the four predicate termination grounds found by the trial court, it is unnecessary to address Issues One, Three, and Four.
BEST INTEREST
In Issue Five, Appellant challenges the legal and factual sufficiency of the evidence supporting the best interest finding. A determination of best interest necessitates a focus on the child, not the parent. See In the Interest of B.C.S. , 479 S.W.3d 918, 927 (Tex.App.-El Paso 2015, no pet.) ; In the Interest of R.F. , 115 S.W.3d 804, 812 (Tex.App.-Dallas 2003, no pet.). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. In re B.C.S. , 479 S.W.3d at 927.
The Texas Supreme Court has enumerated certain factors which should be considered: the child's desires; the child's emotional and physical needs now and in the future; the emotional and physical danger to the child now and in the future; the parenting abilities of the individuals seeking custody; the programs available to assist those individuals to promote the child's best interest; the plans for the child by those individuals or the agency seeking custody; the stability of the home or proposed placement; the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one; and any excuse for the parent's acts or omissions.
*653 Holley v. Adams , 544 S.W.2d 367, 372 (Tex.1976) ("the Holley factors"). We also must bear in mind that permanence is of paramount importance in considering a child's present and future needs. In re B.C.S. , 479 S.W.3d at 927.
Best Interest-Legal Sufficiency
The first factor is the desires of the child. R.A.G. was eight years of age at the time of trial, but he did not testify and there is no evidence of his desires. Evidence that a child is well-cared for by his foster family, is bonded to his foster family, and has spent minimal time in the presence of a parent is relevant to the best interest determination under the desires of the child factor. See In re U.P., 105 S.W.3d 222, 230 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). There is evidence that S.O. and her husband have provided a safe home for R.A.G., he is bonded to them, and he has done well in their care. R.A.G. considers S.O.'s husband to be his father. As detailed in our discussion of Issue Two, the evidence established that Appellant has had no contact with R.A.G. since the child's birth. This factor weighs in favor of the trial court's best interest finding.
The next two factors are the child's emotional and physical needs now and in the future, and the emotional and physical danger to the child now and in the future. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. Edwards v. Texas Department of Protective & Regulatory Services , 946 S.W.2d 130, 138 (Tex.App.-El Paso 1997, no pet.), disapproved of on other grounds by In re J.F.C. , 96 S.W.3d 256 (Tex. 2002) ; In re U.P., 105 S.W.3d at 230 (stating that children need permanency and security). A fact finder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. In re D.L.N ., 958 S.W.2d 934, 934 (Tex.App.-Waco 1997, pet. denied). As noted by the Department, it is undisputed that Appellant engaged in drug trafficking while G.B. was pregnant with R.A.G., and they were both arrested and incarcerated. Appellant had no contact with R.A.G. prior to the Department removing the child from G.B.'s care, and he did not contact R.A.G. or the Department even after learning about the case. Based on this evidence, the trial court could infer that Appellant's absence from R.A.G.'s life would continue to be a danger to R.A.G.'s emotional well-being in the future. The second and third factors weigh in favor of the trial court's best interest finding.
The fourth factor is the parenting abilities of the individuals seeking custody. In reviewing the parenting abilities of a parent, a fact finder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the children. D.O. v. Texas Department of Human Services , 851 S.W.2d 351, 356 (Tex.App.-Austin 1993, no writ), disapproved of on other grounds by In re J.F.C., 96 S.W.3d 256 (Tex. 2002). There is ample evidence in the record that Appellant has not been available to meet R.A.G.'s physical and emotional needs due to his complete absence from the child's life. The evidence related to this factor supports the best interest finding.
The fifth factor examines the programs available to assist the individuals seeking custody to promote the child's best interest. There is no evidence in the record that any programs were available in Mexico to assist Appellant. This factor is neutral.
We will consider the sixth and seventh factors together. The sixth factor is the plans for the child by those individuals or the agency seeking custody. The seventh factor is the stability of the home or proposed placement. At the time of trial, *654 R.A.G. had been residing with S.O. and her husband for about fourteen months. The Department's plan for R.A.G. is termination of Appellant's parental rights and adoption by S.O. and her husband. Caseworker Talavera testified that S.O. was providing a safe and stable environment for the child, and S.O. and her husband planned to adopt R.A.G. Appellant did not articulate a definite plan for R.A.G., but his sister, G.A., testified that they wanted R.A.G. to be placed with Appellant's mother. G.A. and her family had not seen R.A.G. for several years, and they did not contact the Department while the case was pending or attempt to visit R.A.G. Given the evidence showing Appellant's complete lack of contact with R.A.G. and his failure to offer a definite plan for the child, the trial court could have concluded that termination is in R.A.G.'s best interest.
The eighth factor is the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one. Appellant has been absent from R.A.G.'s entire life and he has failed to provide any financial support for him. This evidence supports a conclusion that Appellant's relationship with the child is not a proper one.
The ninth factor is whether there is any excuse for the parent's acts or omissions. Appellant intentionally engaged in criminal conduct which resulted in his incarceration and deportation. While Appellant cannot enter the United States for the purpose of visiting with R.A.G., he has the ability to contact the child by telephone and the internet. Appellant seems to place some blame on the Department for not locating him and serving him with the petition, but the evidence shows that Appellant learned about the case around November 2015, approximately eight months before the trial. Further, the Department's inability to locate Appellant in 2015 and 2016 does not provide a viable excuse for his failure to contact R.A.G. or have a relationship with him prior to 2015. Having reviewed all of the Holley factors, we conclude that the evidence is legally sufficient to establish a firm conviction in the mind of the trial court that termination of T.R.M.'s parental rights is in the child's best interest.
Best Interest-Factual Sufficiency
It is undisputed that Appellant committed a criminal offense which resulted in his incarceration and deportation, and he has never supported R.A.G. or had a relationship with him. Thee record contains some disputed evidence which we have included in the discussion of the Holley factors. After reviewing these factors under the factual sufficiency standard, we conclude that the evidence is factually sufficient for the trial court to establish a firm conviction that termination of Appellant's parental rights is in R.A.G.'s best interest. Issue Five is overruled.
PERMANENT MANAGING CONSERVATOR
In Issue Six, Appellant challenges the legal and factual sufficiency of the evidence supporting the appointment of the Department as the permanent managing conservator of R.A.G. under Section 153.371 of the Family Code. As part of his argument, Appellant contends that the Department failed to prove any of the predicate termination grounds. Section 153.371 lists the rights and duties of a non-parent appointed as the child's sole managing conservator, but it does not establish the standard for the appointment of the managing conservator. See TEX.FAM.CODE ANN. § 153.371 (West Supp. 2016). In this case, the trial court terminated the parental rights of both parents. Section 161.207 provides that if trial court terminates the parent-child relationship with respect to *655 both parents, the court shall appoint a suitable, competent adult, the Department of Family and Protective Services, or a licensed child-placing agency as managing conservator of the child. TEX.FAM.CODE ANN. § 161.207(a) (West Supp. 2016). Appellant's challenge to the conservatorship appointment was subsumed in his challenge to the termination of his parental rights. See In re D.N.C. , 252 S.W.3d 317, 318 (Tex. 2008). Issue Six is overruled.
DENIAL OF DUE PROCESS
In Issue Seven, Appellant argues that he was denied due process because the Department intentionally failed to serve him. The Department responds that Appellant waived his complaint about service by filing an answer and making a general appearance. We agree.
A party waives complaints regarding service of process if he makes a general appearance. In re D.M.B. , 467 S.W.3d 100, 103 (Tex.App.-San Antonio 2015, pet. denied). Appellant filed an answer and generally denied the allegations in the petition. Under Rule 121, an answer constitutes an appearance of the defendant so as to dispense with the necessity for the issuance or service of citation upon him. TEX.R.CIV.P. 121. Further, Rule 120 of the Texas Rules of Civil Procedure provides that an appearance by the defendant in open court, in person or by attorney, has the same force and effect as if the citation had been duly issued and served as provided by law. TEX.R.CIV.P. 120. A party enters a general appearance when it (1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its acts that an action is properly pending, or (3) seeks affirmative action from the court. In re D.M.B. , 467 S.W.3d at 103, citing Exito Electronics Co. v. Trejo , 142 S.W.3d 302, 304-05 (Tex. 2004). Appellant appeared at trial by telephone and his attorney questioned witnesses and made a final argument. Consequently, Appellant waived his complaint about service. See In re D.M.B. , 467 S.W.3d at 103-04. Issue Seven is overruled. Having overruled Issues Two, Five, Six, and Seven, we affirm the judgment of the trial court terminating Appellant's parental rights. The final order terminating Appellant's parental rights to R.A.G. is affirmed.
Hughes, J., not participating

The record does not reflect the date of G.B.'s release from incarceration.

See Tex.Penal Code Ann. § 22.041(c), (f) (West 2011).

The trial court also terminated G.B.'s parental rights to R.A.G., but she has not appealed.