COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | |
|---|---|
| § | No. 08-18-00124-CV |
| § | |
| IN THE INTEREST OF D.A.Z. A CHILD. § | Appeal from |
| § | 143rd District Court |
| § | of Reeves County, Texas |
| § | (TC # 16-03-21454-CVR) |
| § | |

## O P I N I O N

This appeal is from a judgment terminating the parental rights of Appellant, M.L.A., to her child, D.A.Z. We affirm.

### FACTUAL SUMMARY

Appellant, M.L.A. ("Mary"), and L.S.Z., Jr. ("Larry Jr.") are the biological parents of three-year-old D.A.Z. ("Debra").[1] Mary also has a younger daughter, Victoria.[2] The Department became involved with Mary in May 2017 when it received a report that she was pregnant and using methamphetamine. The report included allegations that Mary and her

---

[1] The parties' briefs refer to the child, her biological parents, her paternal grandparents and her half-sister either by initials or by fictitious names as permitted by TEX.R.APP.P. 9.8(a). To enhance the readability of the opinion and minimize confusion, the opinion will refer to these persons by the same fictitious names utilized by the Department in its brief. Accordingly, the opinion will refer to the child as "Debra", to her half-sister as "Victoria", to Appellant as "Mary", to the biological father as "Larry Jr.", and to the paternal grandparents as "Larry Sr." and "Olive".

[2] This case pertains solely to the termination of Mary's parental rights to Debra.

boyfriend were neglecting Debra as a result of their heavy drug use. Danielle Maphis began an investigation for the Texas Department of Family and Protective Services and had an initial meeting with Mary. Mary admitted that she was pregnant and using methamphetamine. She initially agreed to submit to a drug test, but she never followed through despite repeated requests from the Department. On June 12, 2017, Mary was admitted to a hospital with a broken nose received in a domestic violence incident. The following day, the Department filed a petition for protection of Debra, conservatorship, and termination of parental rights. The Department also sought an emergency removal of Debra. The trial court entered an emergency order removing Debra and naming the Department as the temporary sole managing conservator. The Department placed Debra with her paternal grandparents, Larry Sr. and Olive. On June 22, 2017, the trial court ordered Mary to submit to a hair follicle and urinalysis drug testing, but Mary did not comply.

The Department created a service plan to address the issues which led to the removal of Debra. Among other things, Mary was required to regularly visit with Debra, submit to drug testing, complete drug and alcohol assessment, attend in-patient treatment for drug abuse, complete a psychological evaluation, complete parenting classes, and complete counseling. Even though Mary was not incarcerated until February 2018, Mary did not submit to drug testing, and while she completed the drug and alcohol assessment, she failed to complete in-patient drug treatment. Mary did not complete parenting classes or counseling. Mary initially attended a few visits with Debra, but when she missed three scheduled visits in a row, the Department informed Mary that she could resume visitation only if she submitted to drug testing. When Mary failed to comply, the Department suspended visitation with the child.

In July 2017, Victoria was born addicted to methamphetamine. As a result of Victoria's

condition, Mary was charged with injury to a child. Mary pled guilty to the charge on January 5, 2018 and was sentenced to imprisonment for two years, but the sentence was suspended, and the court placed Mary on community supervision (probation) for five years.[3] Shortly after being placed on probation, Mary was arrested for possession of a controlled substance, and the court revoked her community supervision. At the time of the final hearing on May 24, 2018, Mary was incarcerated in a Substance Abuse Facility (SAFPF). Mary asserts in her brief that she successfully completed a number of classes while incarcerated, including parenting and anger management classes, and she was released from the SAFPF in August 2018. There is, however, no evidence in the record to support her assertions.

The petition alleged the following grounds for termination of Mary's parental rights:

(1) Mary knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child, pursuant to § 161.001(b)(l)(D), Texas Family Code;

(2) Mary engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child, pursuant to § 161.001(b)(1)(E), Texas Family Code;

(3) Mary executed before or after the suit is filed an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided by Chapter 161, Texas Family Code, pursuant to § 161.00l(b)(l)(K), Texas Family Code;

(4) Mary constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months and: (1) the Department has made reasonable efforts to return the child to the mother; (2) the mother has not regularly visited or maintained significant contact with the child; and (3) the mother has demonstrated an inability to provide the child with a safe environment, pursuant to § 161.001(b)(l)(N), Texas Family Code;

(5) Mary failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine

---

[3] The Department introduced into evidence as Petitioner's Exhibit 1 a certified copy of the judgment and sentence associated with this conviction. The reporter's record does not include a copy of the exhibit.

months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child, pursuant to § 161.001(b)(l)(O), Texas Family Code.

At the conclusion of the final hearing, the trial court announced that it was granting the Department's petition for termination of Mary's parental rights. In the final judgment, the court included its findings that the Department had proven the termination grounds under Section 161.001(b)(1)(D), (E), (N), and (O) of the Texas Family Code by clear and convincing evidence, and that termination of Mary's parental rights was in Debra's best interest. The trial court also determined that Larry Jr. is Debra's father and it appointed Larry Jr., Larry Sr., and Olive as the permanent joint managing conservators of the child.

## BEST INTEREST FINDING

In Issues One and Two, Mary challenges the legal and factual sufficiency of the evidence supporting the best interest finding. Parental rights may be involuntarily terminated through proceedings brought under Section 161.001 of the Texas Family Code. *See* TEX.FAM.CODE ANN. § 161.001. Under this provision, the petitioner must (1) establish one or more of the statutory acts or omissions enumerated as grounds for termination, and (2) prove that termination is in the best interest of the children. *See id*. Mary does not challenge the sufficiency of the evidence supporting any of the predicate termination grounds.

### *Standards of Review*

When reviewing the legal sufficiency of the evidence in a termination case, we consider all of the evidence in the light most favorable to the trial court's finding, "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005), *quoting In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *see In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). We give deference to the

fact finder's conclusions, indulge every reasonable inference from the evidence in favor of that finding, and presume the fact finder resolved any disputed facts in favor of its findings, so long as a reasonable fact finder could do so. *In the Interest of J.P.B.*, 180 S.W.3d at 573. We disregard any evidence that a reasonable fact finder could have disbelieved, or found to have been incredible, but we do not disregard undisputed facts. *In re J.P.B.*, 180 S.W.3d at 573; *In re J.F.C.*, 96 S.W.3d at 266.

In a factual sufficiency review, the inquiry is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the challenge findings. *See In re J.F.C.*, 96 S.W.3d at 266. We must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. A court of appeals should consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id*. If the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id*.

### The Holley Factors

A determination of best interest necessitates a focus on the child, not the parent. *See In the Interest of B.C.S.*, 479 S.W.3d 918, 927 (Tex.App.--El Paso 2015, no pet.); *In the Interest of R.F.*, 115 S.W.3d 804, 812 (Tex.App.--Dallas 2003, no pet.). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re B.C.S.*, 479 S.W.3d at 927. Several factors must be considered in our analysis of the best interest issue: the child's desires; the child's emotional and physical needs now and in the future; the emotional and physical danger to the child now and in the future; the parenting abilities of the individuals

seeking custody; the programs available to assist those individuals to promote the child's best interest; the plans for the child by those individuals or the agency seeking custody; the stability of the home or proposed placement; the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976)("the *Holley* factors"). The *Holley* factors are not exhaustive and a court may consider other factors. *Id*. at 372. Also, a court need not find evidence of each and every factor to terminate the parent-child relationship. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). We also must bear in mind that permanence is of paramount importance in considering a child's present and future needs. *In re B.C.S.*, 479 S.W.3d at 927.

The first factor is the desires of the child. Debra was only three years of age at the time of the final hearing and there is nothing to indicate she was able to articulate her desires. Evidence that a child is well-cared for by her foster family, is bonded to her foster family, and has spent minimal time in the presence of a parent is relevant to the best interest determination under the desires of the child factor. *See In re R.A.G.*, 545 S.W.3d 645, 652-53 (Tex.App.--El Paso 2017, no pet.); *In re U.P.*, 105 S.W.3d 222, 230 (Tex.App.--Houston [14th Dist.] 2003, pet. denied). The evidence at trial showed that Debra has resided with her paternal grandparents since the beginning of the case in June 2017 and they have provided a safe and appropriate home for Debra and her half-sister Victoria. Debra has had only minimal contact with Mary. While the Department did not present any evidence regarding the strength of the bond between Debra and her grandparents, we conclude that the first factor nevertheless weighs somewhat in favor of the best interest finding.

The second and third factors are the child's emotional and physical needs now and in the

future, and the emotional and physical danger to the child now and in the future. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *In the Interest of R.A.G.*, 545 S.W.3d 645, 653 (Tex.App.--El Paso 2017, no pet.); *In re U.P.*, 105 S.W.3d 222, 230 (Tex.App.--Houston [14th Dist.] 2003, pet. denied). A fact finder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *In re R.A.G.*, 545 S.W.3d at 653; *In re D.L.N.*, 958 S.W.2d 934, 934 (Tex.App.--Waco 1997, pet. denied). Mary has not challenged the legal and factual sufficiency of the evidence supporting the trial court's finding that she engaged in conduct which endangered and emotional well-being of Debra. Mary's neglect of Debra stemmed from her addiction to methamphetamine and she failed to address her issues with drug abuse during the pendency of the case. Further, she was incarcerated as a result of her continued drug abuse. The evidence also showed that Mary failed to regularly visit with Debra after she was removed from Mary's care. Based on the evidence, the trial court could have determined that the second and third factors weigh heavily in support of the best interest finding.

The fourth factor is the parenting abilities of the individuals seeking custody. In reviewing the parenting abilities of a parent, a fact finder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the children. *In re R.A.G.*, 545 S.W.3d at 653; *D.O. v. Texas Department of Human Services*, 851 S.W.2d 351, 356 (Tex.App.--Austin 1993, no writ), *disapproved of on other grounds by In re J.F.C.*, 96 S.W.3d 256 (Tex. 2002). The evidence supports an inference that Mary neglected Debra and failed to provide for her physical and emotional needs. This factor weighs in favor of the best interest finding.

The fifth factor examines the programs available to assist those individuals to promote the child's best interest. Mary failed to take advantage of the parenting classes, counseling, and

drug treatment programs made available to her, and she became incarcerated as a result of her continued drug abuse. Mary argues in her brief that she was unable to complete the requirements of the service plan because she was confined in the Reeves County Jail during the pendency of the case. The Department's caseworker, Charlotte Wright, refuted this claim by testifying that Mary had the ability to comply with the service plan requirements because she was not incarcerated until February 2018. Mary also argues in her brief that she completed parenting classes and drug treatment while incarcerated, but there is no evidence in the record to support these claims. The trial court could infer from the evidence admitted at trial that Mary would not have the ability to motivate herself in the future. *In re W.E.C.*, 110 S.W.3d 231, 245 (Tex.App.--Fort Worth 2003, no pet.). This factor supports the court's best interest finding.

We will consider the sixth and seventh factors together. The sixth factor examines the plans for the child by those individuals or the agency seeking custody. The seventh factor is the stability of the home or proposed placement. The fact finder may compare the parent's and the Department's plans for the child and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *D.O.*, 851 S.W.2d at 356. Mary was incarcerated at the time of trial and there is no evidence that she had any plans for the child. The Department intends for Debra to remain with her paternal grandparents who have provided a safe and stable home for her. The trial court could have found that the paternal grandparents offer Debra stability and permanency she would not have with Mary. The sixth and seven factors weigh in favor of the best interest finding.

The eighth factor is the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one. As already noted, Mary endangered Debra's physical and emotional well-being by neglecting her, by failing to address her issues with drug

abuse, and by failing to regularly visit Debra. Based on this evidence, the trial court could have found that the existing parent-child relationship is not a proper one.

The ninth factor is whether there is any excuse for the parent's acts or omissions. Mary argues in her brief that her drug addiction is an illness and she suggests that she did not have the means to address this condition until she was incarcerated. The evidence shows that Mary made little effort to address her addiction prior to her incarceration in February 2018. She refused to submit to drug testing and she voluntarily left two in-patient drug treatment programs after brief attendance at each one. Further, there is no evidence in the record that Mary successfully completed drug treatment while incarcerated. This factor weighs against the best interest finding.

Having reviewed all of the *Holley* factors, we conclude that the evidence is both legally and factually sufficient to establish a firm conviction in the mind of the trial court that termination of Mary's parental rights is in Debra's best interest. Issues One and Two are overruled.

## RENDITION OF THE PREDICATE TERMINATION GROUNDS

In Issues Three through Ten, Mary argues that there is a variance between the trial court's oral pronouncement at trial and the final termination order. As part of this argument, she contends that the Department did not request that the trial court make any findings on the predicate termination grounds and the trial court did not make any pronouncement on these grounds at the conclusion of the final hearing. Mary reasons that there is a fatal variance between the trial court's oral pronouncement and the final termination order. While the brief sets forth Mary's argument, it is not supported with any citation to authority. *See* TEX.R.APP.P. 38.1(i)(a brief must contain citations to appropriate authority).

The Department's petition clearly sought termination of Mary's parental rights based on five predicate grounds under Section 161.001(b)(1)(D), (E), (K), (N), and (O) and it alleged that termination of Mary's parental rights is in the child's best interests. The petition satisfied the requirements of Section 161.101. *See* TEX.FAM.CODE ANN. §161.101 ("A petition for the termination of the parent-child relationship is sufficient without the necessity of specifying the underlying facts if the petition alleges in the statutory language the ground for the termination and that termination is in the best interest of the child."). There is no requirement in the Family Code that the Department make an additional request at the bench trial for termination on the specific grounds alleged in its petition.

At the conclusion of the final hearing, the trial court stated:

> The termination with regards to the mother's parental rights as requested is granted. And I do find it is in the best interest of the children that the parental rights of the mother be terminated.

In the final termination order, the trial court found that the Department proved the predicate termination grounds under Section 161.001(b)(1)(D), (E), (N), and (O) by clear and convincing evidence.

When there is an inconsistency between a written judgment and an oral pronouncement of judgment, the written judgment controls. *In the Interest of L.G.R.*, 498 S.W.3d 195, 206 (Tex.App.--Houston [14th Dist.] 2016, pet. denied)(affirming termination of parental rights where trial court did not make an oral pronouncement that termination was in best interest of the child, but best interest finding was included in the final termination order). The trial court's pronouncement that it was granting the petition to terminate Mary's parental rights "as requested" necessarily included all five predicate termination grounds that were set forth in the Department's petition. In the final termination order, the trial court found the Department

proved four of the five alleged termination grounds. To the extent there is an inconsistency between the oral pronouncement and the written termination order, the written order controls. Issues Three through Ten are overruled. The trial court's judgment terminating Mary's parental rights to Debra is affirmed.

December 21, 2019

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.