

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-20-00461-CV

**IN THE INTEREST OF B.F.H-J.**, M.Y.J., A.J.J., Children

From the 454th Judicial District Court, Medina County, Texas
Trial Court No. 19-04-25755-CV
Honorable Robert J. Falkenberg, Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:        Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice
                Beth Watkins, Justice

Delivered and Filed: January 13, 2021

AFFIRMED

Appellant R.J. appeals the trial court's order terminating his parental rights to his children,

B.F.H.-J., M.Y.J., and A.J.J.[1]  He challenges the legal and factual sufficiency of the evidence

supporting the trial court's best interest and conservatorship findings.  We affirm the trial court's

order.

### BACKGROUND

On March 5, 2019, the Texas Department of Family and Protective Services ("the

Department") received a report alleging neglectful supervision of the children by R.J.  The report

claimed R.J. used drugs while caring for the children and exposed them to domestic violence

---

[1] To protect the privacy of the minor children, we use initials to refer to the children and their biological parents. TEX.
R. APP. P. 9.8(b)(2).

between him and his girlfriend. The report further alleged the children were afraid of R.J. and the family faced eviction. To keep the children with family members and avoid legal intervention, the Department set up a parental child safety placement plan ("the safety plan") and placed the children with their mother. However, when the children's mother tested positive for drug use, the Department placed the children with the parents of R.J.'s girlfriend. A month later, R.J.'s girlfriend's parents indicated they could no longer care for the children. The Department filed a petition to terminate R.J.'s parental rights, obtained temporary managing conservatorship over the children, and placed them in foster care together.[2] The Department also created a service plan requiring R.J. to complete a drug and alcohol assessment, submit to random drug testing, complete a psychological evaluation, engage in individual counseling, complete domestic violence classes, and build a positive support system. Due to ongoing concerns surrounding R.J.'s drug use, the Department pursued termination of his parental rights.

The trial court held a two-day bench trial at which counsel for R.J. appeared. At the time of trial, B.F.H.-J. was twelve years old, M.Y.J. was eleven, and A.J.J. was nine. The trial court heard testimony from four Department employees: (1) investigator Joe David Sanchez; (2) supervisor Denise Ellinger; (3) conservatorship specialist Victoria Gonzalez; and (4) kinship specialist Rebecca Balderaz. The trial court also admitted a certified copy of R.J.'s service plan into the evidence. The court signed an order terminating R.J.'s parental rights after finding R.J. engaged in conduct under Texas Family Code section 161.001(b)(1)(D), (E), (N), (O), and (P) and that termination of R.J.'s parental rights was in the best interest of the children. The order also appointed the Department as managing conservator of the children. R.J. appealed, challenging the sufficiency of the evidence supporting the trial court's best interest and conservatorship findings.

---

[2] The Department also sought termination of the parental rights of the children's mother, who executed an affidavit voluntarily relinquishing her parental rights. She is not a party to this appeal.

## ANALYSIS

### *Standard of Review*

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate R.J.'s parental rights and that termination was in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the legal and factual sufficiency of evidence supporting a trial court's termination order, we apply well-established standards of review. *See* TEX. FAM. CODE §§ 101.007, 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department presented clear and convincing evidence, a legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re R.S.-T.*, 522 S.W.3d 92, 98 (Tex. App.—San Antonio 2017, no pet.). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In*

*re J.F.C.*, 96 S.W.3d at 266.  Nevertheless, "we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence." *In re S.L.M.*, 513 S.W.3d 746, 748 (Tex. App.—San Antonio 2017, no pet.).  If a reasonable factfinder could "form a firm belief or conviction" that the matter is true, then the evidence is legally sufficient.  *Id*. at 747.

In contrast, in conducting a factual sufficiency review, we must review and weigh all the evidence, including evidence contrary to the trial court's findings.  *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).  We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the challenged finding.  *In re J.F.C.*, 96 S.W.3d at 266.  The evidence is factually insufficient only if "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction."  *Id.*

In both legal and factual sufficiency review, the trial court, as factfinder, is the sole judge of the weight and credibility of the evidence.  *In re E.X.G.*, No. 04-18-00659-CV, 2018 WL 6516057, at *1 (Tex. App.—San Antonio Dec. 12, 2018, pet. denied) (mem. op.).  We must defer to the factfinder's resolution of disputed evidentiary issues and cannot substitute our judgment for that of the factfinder.  *See, e.g., In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency)*.*

### Best Interest

#### Applicable Law

There is a strong presumption that a child's best interest is served by maintaining the relationship with the natural parent, and the Department has the burden to rebut that presumption.  *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d at 97.  In determining whether the Department satisfied this burden, the Texas Legislature has provided several factors for courts to consider regarding a

parent's willingness and ability to provide a child with a safe environment.[3] TEX. FAM. CODE ANN. § 263.307(b). Courts may also apply the list of factors promulgated by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[4]

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive. *See In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Finally, "[a] trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

*Application*

The Department produced evidence that it removed the children from R.J. because he neglected them by using drugs while caring for them. Frequent drug use is relevant to a best

---

[3] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE ANN. § 263.307(b).

[4] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

interest determination, and it can support a factfinder's firm belief or conviction that termination of R.J.'s parental rights is in the children's best interest. *See In re Z.R.M.*, No. 04-15-00063-CV, 2015 WL 4116049, at *6 (Tex. App.—San Antonio July 8, 2015, no pet.) (mem. op.). Department investigator Joe David Sanchez testified that during his investigation, he spoke to R.J., who was the children's primary caregiver, about the allegations. R.J. admitted he used methamphetamines daily for the last two months to give himself energy. The trial court next heard testimony from Department supervisor Denise Ellinger, who testified she spoke to R.J. at the beginning of the Department's involvement about his drug usage and the safety plan. Ellinger testified she explained to R.J. that the safety plan required him to take a drug and alcohol assessment, but R.J. never completed the assessment at the safety plan stage. He did, however, test positive for methamphetamines. Ellinger testified R.J. did not accept responsibility for his positive test results and refused to work with the Department to address his drug use.

Department conservatorship specialist Victoria Gonzalez also testified she worked with R.J. and designed his service plan, which required him to take a drug and alcohol assessment, complete the programs recommended as a result of the assessment, and submit to random drug testing. According to Gonzalez, the Department wanted R.J. to complete the programs recommended after the drug and alcohol assessment before completing any of the other service plan requirements because the Department was most concerned about his drug use. She testified she believed R.J. understood the service plan even though he did not sign it, and he completed a drug and alcohol assessment on May 3, 2019. However, he failed to follow through with the assessment's recommendation to complete outpatient substance abuse treatment. On June 26, 2019, R.J. tested positive for methamphetamines and admitted to using marijuana—albeit, in California where it is legal—and methamphetamines. After he completed a second assessment on July 29, 2019, residential treatment was recommended. R.J. refused to engage in the residential

treatment program and told Gonzalez he would participate in the previously recommended outpatient substance abuse treatment. Gonzalez testified that when she followed up with the outpatient treatment center, she learned R.J. did not attend any sessions. R.J. also tested positive for methamphetamines on August 29, 2019. She then scheduled additional assessments in October and November of 2019, which R.J. missed. In February of 2020, R.J. admitted to Gonzalez that he was still using methamphetamines. In April of 2020, R.J. completed another assessment, and while outpatient substance abuse treatment was recommended, he failed to attend. Gonzalez testified that of the ten drug tests she scheduled for R.J. during this case, he missed eight of them without any explanation and tested positive for the two he took. She also testified these missed tests are considered positive results.

The Department also produced evidence that R.J. exposed the children to domestic violence. This court has recognized that exposing a child to such violence is relevant in a best interest determination. *In re O.N.H.*, 401 S.W.3d 681, 684–85 (Tex. App.—San Antonio 2013, no pet.). Here, the evidence shows the children were afraid of R.J. as a result of his violent behavior. Sanchez testified he did not observe any signs of physical abuse after the children were removed from the home, but B.F.H.-J. told him she feared her father. *See In re E.R.*, No. 01-17-00503-CV, 2017 WL 5892402, at *11 (Tex. App.—Houston [1st Dist.] Nov. 30, 2017, pet. denied) (mem. op.). B.F.H.-J. specifically recalled an incident when her father ran around the house with an axe threatening his girlfriend. Sanchez testified B.F.H.-J. told him her father made her and her siblings "remain in positions" while wielding the axe and she was afraid. B.F.H.-J. also told Sanchez she had witnessed her father argue with his girlfriend multiple times.

Gonzalez further testified R.J. has not had any contact with his children since September of 2019. A parent's lack of contact with their child supports a best interest finding. *See In re R.A.G.*, 545 S.W.3d 645, 654 (Tex. App.—El Paso 2017, no pet.). Here, Gonzalez testified that

the court suspended R.J.'s visitations until he completed the residential treatment program recommended after his second assessment. According to Gonzalez, since that hearing, R.J. has not reached out to her to see how the children are doing or offered any form of support. Gonzalez acknowledged, however, that R.J. recently contacted the children's maternal grandmother, with whom the children are currently living, to tell M.Y.J. happy birthday.

The evidence also shows the children are "doing extremely well" living with their maternal grandmother and have each independently expressed a desire to remain with her. *See In re I.N.D.*, No. 04-20-00121-CV, 2020 WL 2441375, at *6 (Tex. App.—San Antonio May 13, 2020, no pet.) (mem. op.). The evidence shows the Department moved the children from foster care to their maternal grandmother's home in July of 2019 after performing a home study and approving that placement. The home study indicated the grandmother had been living alone since her husband was incarcerated for indecency with a child. According to Gonzalez, the grandmother was pursuing a divorce, which is why the Department approved the placement. Gonzalez also testified the children are excited, happy, and loved in the home, and each time she has visited them, they are engaged in activities together. Department kinship specialist Rebeca Balderaz also testified she visited the children multiple times after they were placed with their grandmother, and the children are happy, well adjusted, and bonded to their grandmother. Both Gonzalez and Balderaz testified the children's grandmother has appropriate parenting skills, is meeting all the children's needs, and has cooperated with the Department to make adoption possible. According to Gonzalez, it would be in the children's best interest for R.J.'s parental rights to be terminated and for the children to be adopted by their maternal grandmother.

After viewing the evidence in the light most favorable to the finding, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of R.J.'s parental rights is in the children's best interest. *See In re J.F.C.*, 96 S.W.3d at 266; *In re S.L.M.*,

513 S.W.3d at 750. The trial court heard extensive testimony about the severity and persistence of R.J.'s drug use and his refusal to complete a treatment program. *See In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("A parent's drug use supports a finding that termination is in the best interest of the child."); *see also* TEX. FAM. CODE § 263.307(b)(8), (10), (11). It also heard evidence that R.J. subjected the children to domestic violence and, as a result, they are afraid of R.J. and want to remain with their maternal grandmother, who plans to adopt them. *See* TEX. FAM. CODE § 263.307(b)(5), (7).

R.J. contends, however, this evidence is factually insufficient because the majority of the *Holley* factors weigh against the trial court's best interest finding. He argues: (1) the Department did not produce evidence that the children were against reunification or were physically abused; (2) no criminal charges were pending against him; and (3) he had complied with the Department's requirements to take drug assessments. While these statements may be true, the *Holley* factors are not all-encompassing, and the lack of evidence as to some factors does not preclude a reasonable factfinder from forming a firm belief or conviction that termination is in a child's best interest. *In re G.C.D.*, 2015 WL 1938435, at *5. Here, the Department produced clear and convincing evidence weighing in favor of termination: the children feared their father and desired to remained with their grandmother; they were exposed to emotional and physical danger with R.J.; R.J. demonstrated an absence of parenting abilities by continuing to use drugs and refusing to participate in a drug treatment program; and the children were placed in a stable environment with a caretaker who planned to adopt them. *See Holley*, 544 S.W.2d at 371–72. When reviewing and weighing all the evidence, including evidence contrary to the trial court's findings, we conclude the disputed evidence weighing against the trial court's best interest finding is not so significant that a factfinder could not have resolved it in favor of the finding. *See In re J.F.C.*, 96 S.W.3d at 266.

Accordingly, we overrule R.J.'s arguments and hold that legally and factually sufficient evidence supports the trial court's best interest finding that termination of R.J.'s parental rights is in the best interest of his children.

### *Conservatorship*

We review the trial court's appointment of a nonparent as sole managing conservator for an abuse of discretion, and we will reverse that appointment only if we determine it is arbitrary or unreasonable. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). Having determined the evidence is legally and factually sufficient to support the termination of R.J.'s parental rights, we further hold the trial court did not abuse its discretion in appointing the Department as the managing conservator of the children. *See In re L.G.R.*, 498 S.W.3d at 207 (concluding no abuse of discretion in conservatorship finding where the evidence was sufficient to support termination of parental rights). We overrule R.J.'s last issue.

### CONCLUSION

Based on the foregoing, we affirm the trial court's order of termination.

Beth Watkins, Justice