COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
|---|---|---|
| IN THE INTEREST OF | § | No. 08-18-00155-CV |
| A.F.J. AND A.K.R., | § | Appeal from |
| CHILDREN. | § | 109th District Court |
| | § | of Andrews County, Texas |
| | § | (TC # 20783) |
| | § | |

## O P I N I O N

This appeal is from a judgment terminating the parental rights of Appellant, S.R., to her children, A.F.J. and A.K.R. We affirm.

### FACTUAL SUMMARY

In August 2017, S.R. (Mother) and her children, fourteen-year-old A.F.J. and seven-year-old A.K.R., were living with the children's maternal grandmother, P.M. (Grandmother) in Andrews, Texas.[1] The family had been participating in Family Based Safety Services since March 2017 because Alex had been sexually assaulted by a family member. Alice had also attempted suicide after learning that Alex had been sexually assaulted. As a result, Alice had been seeing a therapist. Mother was on felony probation for a drug offense and she tested

---

[1] To protect the identity of the children, the opinion will refer to Appellant S.R. as Mother, to P.M. as Grandmother, to A.F.J. by the fictitious name "Alice", to A.K.R. by the fictitious name "Alex", and to J.B. by the fictitious name "Jane". *See* TEX.R.APP.P. 9.8.

positive on August 10, 2017 for methamphetamine. She also tested positive for amphetamines, marihuana, and methamphetamine on August 15, 2017.

On August 17, 2017, Amy Quinn, a CPS investigator, conducted a home visit to investigate a report stating that Mother was using methamphetamine and the home was infested with roaches. When Quinn got out of her vehicle at the curb, she immediately smelled urine, feces, and "filth" emanating from the residence. Once inside the residence, Quinn saw roaches crawling on the floor and the doorframes. Roaches were also present in the food supply, including inside of the refrigerator. Both children reported to Quinn that insects frequently crawled on them, and Alex had insect bites on his ankles. Alex was worried about the insect bites and the bugs that were in his food. Seven dogs were living inside of the home and Quinn saw dog urine and feces on the floor. She described the smell of dog urine and feces as "overwhelming". Mother admitted to Quinn that she and Grandmother had used marihuana in the home. Neither Mother nor Grandmother would take responsibility for the condition of the home. Quinn testified that no one in the home was providing "a level of parenting to the children."

The following day, the Department filed a petition to terminate the parental rights of Mother and the biological fathers of the children, and it sought to be appointed the temporary managing conservator of the children. The trial court entered an emergency order removing the children from Mother's care and appointing the Department as the temporary managing conservator. The children were placed in foster care.

The trial court conducted the bench trial on August 16, 2018, one year after the children were removed from Mother's care. Mother is currently on felony probation for a drug offense.[2]

---

[2] Amy Quinn's affidavit attached to the termination petition reflects that Mother was convicted of manufacturing and delivering a controlled substance. Mother testified that her conviction was for "200 grams of meth" and she was

She is behind on the payments for her fine, and she was arrested for misdemeanor theft[3] and driving while license invalid[4] in December of 2017, but a motion to revoke her probation has not been filed.

Mother testified that she works full-time in a restaurant and makes $12 an hour. Mother had worked fifty-eight hours the previous week. Mother does not have a vehicle because she sold it after her last arrest, and she walks everywhere or gets a ride. She moved out of Grandmother's home and had been renting a two-bedroom house in Andrews since October 2017. Mother lives by herself and has three dogs. Tori Urbina, a conservatorship caseworker for the Department, visited the home shortly before trial. Urbina described the home as having a clean appearance, but she smelled a strong odor of urine. Urbina did not believe the two-bedroom home was large enough for Mother and the children. It is undisputed that Mother has satisfied her service plan requirements with the exception of anger management counseling. When asked why she had not completed anger management, Mother explained that her last appointment was in May 2018 but the provider had left Andrews. Mother admitted that she had not asked her CPS caseworker to give her the name of an alternate provider. Ladonne Knighten, a volunteer supervisor with CASA, testified that both Alice and Alex have increased emotional and therapeutic needs. Alex has been diagnosed with Reactive Attachment Disorder. Knighten explained that a child with that disorder has difficulty in making appropriate connections with others and has more extreme needs with regard to learning to interact socially with both peers and adults. To successfully parent a child with Reactive Attachment Disorder, the parent would

---

placed on probation in December 2016.

[3] *See* TEX.PENAL CODE ANN. § 31.03(a), (e). Mother testified that she stole a drone and some movies, but she did not state the value of the property.

[4] *See* TEX.TRANSP.CODE ANN. § 521.457 (defining the offense of driving while license invalid).

first need to be knowledgeable regarding the disorder and be prepared to consistently meet the child's needs. Additionally, Alex requires constant supervision, guidance, and structure, and a parent must establish and stick to routines.

Alice has exhibited what Knighten characterized as extreme behaviors, including seeking out love and attention in inappropriate ways. One particular concern is that Alice sneaks out of the home at night.[5] She also has issues with anger management and aggression and has been involved in physical altercations with other children. Knighten testified that Alice's anger and aggression exceeded that of an average fourteen-year-old. According to Knighten, Alice is learning boundaries and, like her brother, requires constant supervision, guidance, and direction. Further, both children require a structured home environment with routines. Another CASA volunteer, Angela Smith, ranked the children's issues as being at a moderate to severe level, and testified that it is extremely important that the children receive the proper treatment at their current ages because any delay in treatment would make it much more difficult for them to lead productive lives as adults.

While Mother has made significant progress in some areas of her life, there is evidence she did not have an understanding of the children's specific emotional and therapeutic needs. Mother testified that Alex had ADHD and "one other issue" which was being addressed by a therapist and medication. Mother understood that the sexual abuse had "messed his mind up pretty bad" but she did not know what medications Alex was taking or demonstrate any awareness of his specific diagnosis and how it impacted his needs. With regard to Alice, Mother denied any knowledge of her sexual behavior and claimed Alice had snuck out of the foster mother's home only once when she was first placed in the home. Mother was aware that the Department had recommended that Mother place alarms on the doors and windows of her home

---

[5] The foster mother has taken precautions to limit Alice's access to doors and windows at night.

to prevent Alice from sneaking out of the house at night, but she had not complied with this recommendation. Mother claimed that she spoke with the children's foster mother every day, and the children were happy and had no problems other than they wanted to come home. Mother admitted that she knew Alice had been involved in three physical altercations, but her behavior was otherwise fine.

Mother's inability to grasp the significance of the children's issues and needs is demonstrated by her decision to begin a romantic relationship with a registered sex offender, J.B. ("Jane"), during the pendency of this case. Mother admitted that the child Jane had sexually assaulted was one of Alice's friends. Mother claimed that she ended the relationship with Jane after the last court date because her children were more important, but Angela Smith testified that Mother had continued her relationship with Jane.

The trial court found that the Department had proven by clear and convincing evidence that Mother had: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children, pursuant to § 161.00l(b)(l)(D), Texas Family Code; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the child, pursuant to § 161.00l(b)(l)(E), Texas Family Code; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for Mother to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the child, pursuant to § 161.001(b)(l)(O), Texas Family Code. The court also found by clear and convincing evidence that termination of Mother's parental rights was in the children's best

interest, and it appointed the Department as the permanent managing conservator of the children.

## TERMINATION GROUNDS AND BEST INTEREST
**UNDER SECTION 161.001** Mother raises four issues challenging the legal and factual sufficiency of the evidence supporting the trial court's findings. In Issues One through Three, Mother argues that the evidence is legally and factually insufficient to support the predicate termination grounds found by the trial court under Section 161.001(b)(1)(D), (E), and (O). In Issue Four, she challenges the legal and factual sufficiency of the evidence supporting the best interest finding made under Section 161.001(b)(2).

Parental rights may be involuntarily terminated through proceedings brought under Section 161.001 of the Texas Family Code. *See* TEX.FAM.CODE ANN. § 161.001. Under this provision, the petitioner must (1) establish one or more of the statutory acts or omissions enumerated as grounds for termination, and (2) prove that termination is in the best interest of the children. *See id*. Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Texas Department of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In the Interest of A.B.B.*, 482 S.W.3d 135, 138 (Tex.App.--El Paso 2015, pet. dism'd w.o.j.). Only one predicate finding under Section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We will affirm the termination order if the evidence is both legally and factually sufficient to support any alleged statutory ground the trial court relied upon in terminating the parental rights as well as the finding of best interest. *J.S. v. Texas Department of Family and Protective Services*, 511 S.W.3d 145, 159 (Tex.App.--El Paso 2014, no pet.).

*Standards of Review*

When reviewing the legal sufficiency of the evidence in a termination case, we consider all of the evidence in the light most favorable to the trial court's finding, "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In the Interest of J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005), *quoting In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002); *see In re J.O.A.,* 283 S.W.3d 336, 344 (Tex. 2009). We give deference to the fact finder's conclusions, indulge every reasonable inference from the evidence in favor of that finding, and presume the fact finder resolved any disputed facts in favor of its findings, so long as a reasonable fact finder could do so. *In the Interest of J.P.B.*, 180 S.W.3d at 573. We disregard any evidence that a reasonable fact finder could have disbelieved, or found to have been incredible, but we do not disregard undisputed facts. *In re J.P.B.*, 180 S.W.3d at 573; *In re J.F.C.*, 96 S.W.3d at 266.

In a factual sufficiency review, the inquiry is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the challenge findings. *See In re J.F.C.*, 96 S.W.3d at 266. We must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. A court of appeals should consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id.* If the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

*Section 161.001(b)(1)(E) -- Endangering Conduct*

We begin by addressing Issue Two which raises a challenge to the legal and factual sufficiency of the evidence supporting the termination of Mother's parental rights under Section

161.001(b)(1)(E).  The trial court found by clear and convincing evidence that Mother engaged in conduct, or knowingly placed the children with persons who engaged in conduct, that endangered the physical or emotional well-being of the children.

The term "conduct," as used in Section 161.001(b)(1)(E), includes both the parent's actions and failures to act.  *In re M.J.M.L.*, 31 S.W.3d 347, 351 (Tex.App.--San Antonio 2000, pet. denied).  Conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child.  *See A.S. v. Texas Department of Family and Protective Services*, 394 S.W.3d 703, 712 (Tex.App.--El Paso 2012, no pet.); *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex.App.--Fort Worth 2009, no pet.).

Under Section 161.001(b)(1)(E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical and emotional well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act.  *See In re J.T.G.*, 121 S.W.3d 117, 125 (Tex.App.--Fort Worth 2003, no pet.).  Termination under this subsection must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent.  *Id.*  When determining whether a parent has engaged in an endangering course of conduct, a fact finder may consider the parent's actions and inactions that occurred both before and after the child was born.  *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *In re B.C.S.*, 479 S.W.3d 918, 926 (Tex.App.--El Paso 2015, no pet.); *In re S.M.*, 389 S.W.3d 483, 491-92 (Tex.App.--El Paso 2012, no pet.).  The conduct need not occur in the child's presence, and it may occur both before and after the child has been removed by the Department. *Walker v. Texas Department of Family & Protective Services*, 312 S.W.3d 608, 617 (Tex.App.--Houston [1st Dist.] 2009, pet. denied).  Scienter is not required for an appellant's own acts under Section 161.001(b)(1)(E), although it is required when a parent places her child

- 8 -

with others who engage in endangering acts. *In re U.P.*, 105 S.W.3d 222, 236 (Tex.App.--Houston [14th Dist.] 2003, pet. denied).

Evidence of illegal drug use by a parent and its effect on a parent's life and his ability to parent may establish an endangering course of conduct under Section 161.001(b)(1)(E). *See In re J.O.A.*, 283 S.W.3d at 346; *In the Interest of K-A.B.M.*, 551 S.W.3d 275, 287 (Tex.App.--El Paso 2018, no pet.); *Walker*, 312 S.W.3d at 617. Further, evidence that the parent continued to use illegal drugs even though the parent knew her parental rights were in jeopardy is conduct showing a voluntary, deliberate, and conscious course of conduct, which by its nature, endangers a child's well-being. *See In re M.E.-M.N.*, 342 S.W.3d 254, 263 (Tex.App.--Fort Worth 2011, pet. denied); *Cervantes-Peterson v. Texas Department of Family & Protective Services*, 221 S.W.3d 244, 253-54 (Tex.App.--Houston [1st Dist.] 2006, no pet.). The commission of criminal conduct by a parent may support termination under Section 161.001(b)(1)(E) because it exposes the child to the possibility that the parent may be imprisoned. *In re R.A.G.*, 545 S.W.3d 645, 650-52 (Tex.App.--El Paso 2017, no pet.).

The evidence showed that Mother has a history of illegal drug use. Her criminal history includes a felony conviction for an offense involving more than 200 grams of methamphetamine, and she was placed on felony probation for that offense in December 2016. Despite being on felony probation for this offense, Mother continued to use methamphetamine and marihuana as evidenced by her positive drug tests in August 2017. In addition to creating a risk that that she would be impaired by her drug usage, Mother's conduct created a risk that her probation would be revoked resulting in her incarceration. Mother also engaged in other criminal conduct while on felony probation and while the termination case was pending. This conduct exposed the children to the danger that Mother's probation would be revoked and she would be incarcerated.

Impairment or imprisonment would render Mother incapable of parenting. *See In re A.A.M.*, 464 S.W.3d 421, 426 (Tex.App.--Houston [1st Dist.] 2015, no pet.). Further, the trial court could reasonably conclude that Mother would continue to use illegal drugs and endanger the children's well-being in the future. *See In re J.O.A.*, 283 S.W.3d at 346.

There is also evidence that Mother began a romantic relationship with Jane, a registered sex offender who had sexually assaulted one of Alice's friends. While Mother claimed that the relationship did not begin until sometime in 2018 and she ended the relationship with Jane after the May 2018 court date, Mother posted a picture of herself with Jane on Facebook on July 20, 2018. Even though Mother testified that she ended the relationship with Jane prior to the criminal trial which resulted in Jane's conviction and incarceration, Mother attended the trial to support her as a friend. Given the serious issues impacting the emotional well-being of both children, Mother's decision to have a relationship with Jane is another irresponsible choice which endangered the children's emotional well-being. Having considered the evidence in the light most favorable to the trial court's finding, we conclude that a reasonable fact finder could have formed a firm belief or conviction that Mother engaged in a course of conduct endangering to the children's physical and emotional well-being under section 161.001(b)(1)(E). *See In re J.F.C.*, 96 S.W.3d at 266; *In re K-A.B.M.*, 551 S.W.3d at 286-87; *In re A.A.M.*, 464 S.W.3d at 426. Accordingly, we find that the evidence is legally sufficient to support the trial court's finding.

In conducting the factual sufficiency review, we have considered the evidence demonstrating that Mother has recently made improvements in her conduct, but those improvements do not conclusively negate Mother's history of drug usage, criminal conduct, and irresponsible choices. See *In re J.O.A.*, 283 S.W.3d at 346 (finding evidence factually sufficient

to support finding under Section 161.001(b)(1)(E) even though parent's conduct had improved; parent's improvement in conduct, especially of short-duration, did not conclusively negate the probative value of a long history of drug use and irresponsible choices). Accordingly, we find the evidence factually sufficient to support the trial court's determination that Mother engaged in a course of conduct which endangered the children's physical and emotional well-being. Issue Two is overruled. Having found the evidence sufficient to support termination under Section 161.001(b)(1)(E), it is unnecessary to address Issues One and Three.

*Best Interest - Legal Sufficiency*

In Issue Four, Mother challenges the legal and factual sufficiency of the evidence supporting the best interest finding made under Section 161.001(b)(2) of the Family Code. A determination of best interest necessitates a focus on the child, not the parent. *See In the Interest of B.C.S.*, 479 S.W.3d 918, 927 (Tex.App.--El Paso 2015, no pet.); *In the Interest of R.F.*, 115 S.W.3d 804, 812 (Tex.App.--Dallas 2003, no pet.). There is a strong presumption that it is in the child's best interest to preserve the parent-child relationship. *In re B.C.S.*, 479 S.W.3d at 927. Several factors must be considered in our analysis of the best interest issue: the child's desires; the child's emotional and physical needs now and in the future; the emotional and physical danger to the child now and in the future; the parenting abilities of the individuals seeking custody; the programs available to assist those individuals to promote the child's best interest; the plans for the child by those individuals or the agency seeking custody; the stability of the home or proposed placement; the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one; and any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976)("the *Holley* factors"). We also must bear in

mind that permanence is of paramount importance in considering a child's present and future needs. *In re B.C.S.*, 479 S.W.3d at 927.

We begin by examining the legal sufficiency of the evidence supporting the best interest finding. The first factor is the desires of the children. It is undisputed that both children want to return to Mother, and Alice testified at length regarding her feelings. Alice had previously told the caseworkers that she did not want to return to Mother. When asked to explain her sudden change of heart, Alice testified that her prior statements had been used unfairly against Mother. She also indicated that she had changed her mind after watching Alex cry frequently because he wanted to be with Mother. The trial could have concluded that Alice's testimony was not based on what she wanted for herself but was made out of sympathy for both Mother and Alex. This factor is neutral. *See In re M.C.*, 482 S.W.3d 675, 688-89 (Tex.App.--Texarkana 2016, pet. denied)(factor neutral where evidence showed that one of the children wanted to return to parent and there was no evidence regarding desires of other children).

The next two factors are the children's emotional and physical needs now and in the future, and the emotional and physical danger to the children now and in the future. The need for permanence is a paramount consideration for a child's present and future physical and emotional needs. *In re R.A.G.*, 545 S.W.3d at 653; *In re U.P.*, 105 S.W.3d at 230. Both children have significant special needs which require a stable home and therapeutic treatment. The children also need a structured environment, constant supervision, and guidance. As discussed in Issue Two, the evidence supports the trial court's finding that Mother engaged in a course of conduct which endangered the physical and emotional well-being of the children. A fact finder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *In re R.A.G.*, 545 S.W.3d at 653; *In re D.L.N.*, 958 S.W.2d 934, 934

(Tex.App.--Waco 1997, pet. denied). Based on the evidence, the trial court could have determined that the second and third factors weigh heavily in support of the best interest finding.

The fourth factor is the parenting abilities of the individuals seeking custody. In reviewing the parenting abilities of a parent, a fact finder can consider the parent's past neglect or past inability to meet the physical and emotional needs of the children. *D.O. v. Texas Department of Human Services*, 851 S.W.2d 351, 356 (Tex.App.--Austin 1993, no writ), *disapproved of on other grounds by In re J.F.C.,* 96 S.W.3d 256 (Tex. 2002). The evidence showed that Mother has poor parenting skills and she endangered the children through her drug use and criminal conduct. During her testimony, Mother demonstrated an unawareness of the children's diagnoses and failure to grasp the significance of their needs. To her credit, Mother completed most of her service plan requirements and moved out of Grandmother's home which had deplorable and unsanitary living conditions. As one of the CASA volunteers noted, Mother had completed most of her services but she still had not matured to the level that she is able to make appropriate decisions for the children. Despite being on felony probation, Mother continued to use illegal drugs, including methamphetamine, and commit criminal offenses. She also chose to have a relationship with a registered sex offender who had sexually assaulted one of Alice's friends. It was the trial court's task to weigh all of the evidence related to Mother's parenting skills and the court could have concluded that Mother's history of drug use, criminal conduct, and poor decision-making outweighed any improvement in her parenting skills. This factor weighs heavily in favor of the best interest finding.

The fifth factor examines the programs available to assist those individuals to promote the child's best interest. Mother began receiving Family Based Safety Services in March 2017 to assist her with addressing the children's needs following Alex's sexual assault. During this time,

Mother continued to use illegal drugs and they were living in extremely unsanitary conditions in Grandmother's home. After the children were removed, Mother completed her service plan requirements except for anger management counseling. Mother did not make any effort to complete the anger management counseling after her provider left the area. While Mother participated in some of the programs available to her and showed some improvement, she continued to commit criminal offenses and make poor decisions. This factor supports the best interest finding.

We will consider the sixth and seventh factors together. The sixth factor examines the plans for the child by those individuals or the agency seeking custody. The seventh factor is the stability of the home or proposed placement. The fact finder may compare the parent's and the Department's plans for the children and determine whether the plans and expectations of each party are realistic or weak and ill-defined. *D.O.*, 851 S.W.2d at 356. Alice and Alex have resided with a foster family since August of 2017 and had improved, particularly with regard to their health and attitudes. The current foster family is unwilling to adopt the children. The Department is continuing its efforts to find someone willing to adopt the children. During the month before trial, Urbina had spoken with relatives of the children about adoption and had mailed them the home study paper work.

Mother testified that she wants the children returned to her. She intends to buy a home, but if she is unable to do that, they would continue living in the two-bedroom house she is renting. Mother added that the lease would be ending in October 2018, and she would go on a month-to-month basis because she did not want to enter another one-year lease. Mother planned to sleep in the living room and the children would have their own bedrooms.

The trial court could have determined that the foster home will continue to provide a stable and structured home for the children whereas Mother's plan to provide permanency and stability is not realistic. The sixth and seventh factors weigh in favor of the best interest finding.

The eighth factor is the parent's acts or omissions that may indicate that the existing parent-child relationship is not a proper one. The evidence showed that Mother endangered the children by using illegal drugs while the children were in her care and she smoked marihuana with her mother in the children's presence. Mother also continued to commit criminal offenses during the pendency of the case. Perhaps the most compelling evidence related to the eighth factor is Mother's decision to have a romantic relationship with a registered sex offender who had sexually assaulted one of Alice's friends. Mother made this decision while the termination case was pending and knowing that Alice had attempted to commit suicide after learning that her younger brother had been sexually assaulted by a family member. Based on this evidence, the trial court could have found that the existing parent-child relationship between Mother and the children is not a proper one.

The ninth factor is whether there is any excuse for the parent's acts or omissions. Mother's brief does not address this factor or offer any excuse for her conduct.

After considering the evidence related to the *Holley* factors, the trial court could have reached a firm conviction that even though the children desired to return to Mother and Mother had shown some improvement in her stability and circumstances, Mother is likely to endanger the children in the future by continuing to make inappropriate decisions, and Mother is unlikely to be able to provide a structured and safe environment for the children or the kind of care that they require. *See In re C.P.*, No. 07-12-00545-CV, 2013 WL 2107176, at *3-4 (Tex.App.--Amarillo May 10, 2013, no pet.)(mem.op.)(even though one child desired to return to mother and

mother had shown improved stability, evidence was sufficient to support best interest finding where children required medication and therapy, and evidence permitted the trial court to reach a firm conclusion that mother was unlikely to be able to provide the kind of care the children required).  Consequently, we conclude that the evidence is both legally and factually sufficient to support the trial court's finding that termination of Mother's parental rights is in the best interest of both children.  Issue Four is overruled.  The order terminating Mother's parental rights to the children is affirmed.

March 1, 2019

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.