

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-19-00629-CV

**IN THE INTEREST OF D.A.B.**, a Child

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2018PA00630
Honorable Richard Price, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Patricia O. Alvarez, Justice
                Beth Watkins, Justice

Delivered and Filed: March 4, 2020

AFFIRMED

Appellants L.G. and A.B. separately appeal the trial court's order terminating their parental rights to their child, D.A.B. (born 2016).[1] L.G. challenges the sufficiency of the evidence supporting the trial court's findings under Texas Family Code ("the Code") subsections 161.001(b)(1)(D) and (E), and A.B. challenges the sufficiency of the evidence supporting the trial court's findings under subsections 161.001(b)(1)(D), (E), (N) and (O). They both also challenge the sufficiency of the evidence that termination was in the best interest of D.A.B. We affirm the trial court's order.

---

[1] To protect the minor's identity, we refer to the parents and child using aliases. *See* TEX. R. APP. P. 9.8.

BACKGROUND

On March 7, 2018, the Texas Department of Family and Protective Services ("the Department") removed D.A.B. from L.G.'s and A.B.'s care after receiving a referral alleging that L.G. and A.B. had been involved in a theft with D.A.B. present. The Department arrived and law enforcement arrested both parents, who were under the influence of drugs. D.A.B. had a severe diaper rash that was "almost sunburn red" with sores. The Department placed D.A.B. with a family member and initiated an investigation. During its investigation, the Department learned that it had been involved with L.G. and A.B. two years earlier when it removed D.A.B. from their care after she was born addicted to heroin. L.G. and A.B. were reunited with D.A.B. in 2017 after successfully completing their family service plans. However, when the Department met with L.G. and A.B. in their home about one week after the theft, they tested positive for methamphetamines and amphetamines.

The Department obtained temporary managing conservatorship over D.A.B., placed her with a foster family,[2] and filed a petition to terminate L.G.'s and A.B.'s parental rights. The Department also created family service plans for both parents. As a condition of reunification, the service plans required both parents to complete a psychological or psychiatric evaluation; receive counseling; complete parenting classes, drug and alcohol assessments, and drug treatment at a drug treatment facility; attend weekly supervised visitations; and maintain stable housing and employment. After L.G. and A.B. failed to complete their service plans, the Department pursued termination of their parental rights.

The trial court held a bench trial on May 10, 2019, July 16, 2019, August 28, 2019, and September 9, 2019. L.G. appeared in person for the May, July and August settings, but by phone

---

[2] Although the Department initially placed D.A.B. with a family member, that family member could not care for D.A.B. due to health issues.

for the September setting because she had been arrested and was awaiting placement at an in-patient drug treatment facility. A.B. appeared by phone because he was incarcerated on a probation violation related to the theft. The trial court heard testimony from: (1) the Department caseworker; (2) the Department investigator; (3) the foster mother; (4) L.G.'s probation officer; (5) L.G.; and (6) A.B. At the conclusion of the trial, the court terminated L.G.'s parental rights pursuant to subsections 161.001(b)(1)(D), (E), (M), (O), and (P) and terminated A.B.'s parental rights pursuant to subsections 161.001(b)(1)(D), (E), (N), and (O). The trial court also found that termination of L.G.'s and A.B.'s parental rights was in the best interest of D.A.B. L.G. and A.B. now separately appeal.

## ANALYSIS

### Standard of Review

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department had the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate L.G.'s and A.B.'s parental rights and that termination was in the best interest of their child. TEX. FAM. CODE ANN. §§ 161.001, 161.206; *In re A.V.*, 113 S.W.3d 355, 358 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the legal and factual sufficiency of evidence supporting a trial court's order of termination, we apply well-established standards of review. *See* TEX. FAM. CODE §§ 101.007, 161.206(a); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department presented clear and convincing evidence, a legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re R.S.-T.*, 522 S.W.3d 92, 98 (Tex. App.—San Antonio 2017, no pet.). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.F.C.*, 96 S.W.3d at 266. Nevertheless, "we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence." *In re S.L.M.*, 513 S.W.3d 746, 748 (Tex. App.—San Antonio 2017, no pet.). If a reasonable factfinder could "form a firm belief or conviction" that the matter that must be proven is true, then the evidence is legally sufficient. *Id*. at 747.

In contrast, in conducting a factual sufficiency review, we must review and weigh all of the evidence, including the evidence that is contrary to the trial court's findings. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). We consider whether the disputed evidence is such that a reasonable factfinder could have resolved it in favor of the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if the disputed evidence is so significant that a reasonable factfinder could not have formed a firm belief or conviction in favor of the challenged finding. *See id.*

In both a legal sufficiency review and a factual sufficiency review, the trial court, as factfinder, is the sole judge of the weight and credibility of the evidence. *In re E.X.G.*, No. 04-18-

00659-CV, 2018 WL 6516057, at *1 (Tex. App.—San Antonio Dec. 12, 2018, pet. denied) (mem. op.). We must defer to the factfinder's resolution of disputed evidentiary issues, and cannot substitute our judgment for that of the factfinder. *See, e.g., In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

### Predicate Statutory Grounds

The trial court found clear and convincing evidence of multiple predicate grounds to terminate L.G.'s and A.B.'s parental rights, including D and E. On appeal, L.G. challenges the sufficiency of the evidence only as to grounds D and E. However, A.B. challenges the sufficiency of the evidence supporting the trial court's findings on all grounds.

In general, assuming a best interest finding, only one predicate ground under section 161.001(b)(1) is sufficient to support a judgment of termination. *In re A.V.*, 113 S.W.3d at 362; *In re A.R.R.*, No. 04-18-00578-CV, 2018 WL 6517148, at *1 (Tex. App.—San Antonio Dec. 12, 2018, pet. denied) (mem. op.). To be successful on appeal, an appellant must challenge all the predicate grounds upon which a trial court based its termination order. *In re S.J.R.-Z.*, 537 S.W.3d at 682. When an appellant such as L.G. does not challenge all the grounds that may support an order of termination, we typically do not address the sufficiency of the evidence of any of the predicate grounds for termination. *See In re A.V.*, 113 S.W.3d at 361–62; *In re S.J.R.-Z.*, 537 S.W.3d at 682. Instead, we must accept the validity of the unchallenged grounds and affirm the termination order. *See In re A.V.*, 113 S.W.3d at 361–62; *In re S.J.R.-Z.*, 537 S.W.3d at 682.

However, because termination under subsection 161.001(b)(1)(D) or (E) may have implications for a parent's parental rights to other children, appellate courts are mandated to address issues challenging a trial court's findings under those subsections. *In re N.G.*, 577 S.W.3d 230, 236–37 (Tex. 2019). Pursuant to the supreme court's instruction, we will consider L.G.'s

sufficiency argument as to subsections D and E even though she does not challenge termination under subsections M, O, and P. *See In re L.C.*, No. 12-19-00137-CV, 2019 WL 4727826, at *2 (Tex. App.—Tyler Sept. 27, 2019, no pet.) (mem. op.) (addressing parents' sufficiency challenges to subsections D and E even though they did not challenge all grounds upon which termination could be supported). We consolidate our analysis as to both statutory grounds because the evidence concerning those two grounds is interrelated. *See In re J.T.G.*, 121 S.W.3d 117, 126 (Tex. App.—Fort Worth 2003, no pet.).

Subsection D allows a trial court to terminate parental rights if it finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(D). Under subsection D, the trial court examines "evidence related to the environment of the children to determine if the environment was the source of endangerment to the children's physical or emotional well-being." *In re J.T.G.*, 121 S.W.3d at 125. "Environment" refers to the acceptability of the child's living conditions and a parent's conduct in the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *Id.* A parent does not need to know for certain that the child is in an endangering environment. *In re R.S.-T.*, 522 S.W.3d at 109. Awareness of a potential for danger is sufficient. *Id.* The relevant period for review of environment supporting termination under subsection D is before the Department removes the child. *In re J.R.*, 171 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Subsection E allows a trial court to terminate a parent's rights if the court finds by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the

child." TEX. FAM. CODE § 161.001(b)(1)(E). Under subsection E, the trial court determines whether there is evidence that a parent's acts, omissions, or failures to act endangered the child's physical or emotional well-being. *See In re J.T.G.*, 121 S.W.3d at 125. "It is not necessary that the parent's conduct be directed at the child or that the child actually be injured; rather, a child is endangered when the environment or the parent's course of conduct creates a potential for danger which the parent is aware of but disregards." *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.— Houston [14th Dist.] 2005, no pet.). Courts may further consider parental conduct that did not occur in the child's presence, including conduct before the child's birth or after the child was removed from a parent's care. *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *4–5 (Tex. App.— San Antonio Aug. 21, 2019, pet. denied) (mem. op.).

### *Application*

### *L.G.*

Here, the Department produced evidence that L.G. knowingly placed and allowed D.A.B. to remain in conditions that endangered D.A.B.'s physical and emotional well-being by abusing drugs before her removal. Drug use and its effect on a parent's life and her ability to parent may establish an endangering course of conduct under subsections D and E. *In re J.O.A.*, 283 S.W.3d at 345. When reviewing the living conditions before D.A.B.'s removal, the trial court heard testimony from the Department caseworker and investigator, who testified that L.G. was under the influence of methadone when the Department removed D.A.B. from her care. *See In re J.R.*, 171 S.W.3d at 569 (stating relevant time period for review under subsection D is before child's removal). The Department also produced evidence it had two previous cases with L.G. involving her use of illegal drugs. The Department caseworker testified that in 2013, the Department removed another child from L.G.'s care due to her drug use, and in 2016, it removed D.A.B. from L.G.'s care because D.A.B. was born addicted to heroin. The trial court also heard testimony from

D.A.B.'s foster mother, who testified she has known L.G. since high school and L.G. has been struggling with addiction for years. The foster mother testified she first met D.A.B. in the hospital when D.A.B. was born, and that as a result of L.G.'s drug use, she has taken care of D.A.B. at various times. L.G. also admitted she has been battling drug addiction for the past fifteen years and untreated severe depression, but she is hoping in-patient treatment will help her.

The Department also produced evidence that after it removed D.A.B. from L.G.'s care, L.G. continued to use illegal drugs. "Continued illegal drug use after a child's removal is conduct that jeopardizes parental rights and may be considered as establishing an endangering course of conduct" under subsection E. *In re S.R.*, 452 S.W.3d at 361–62; *see In re J.O.A.*, 283 S.W.3d at 345. The Department investigator testified that when she first met with L.G. about one week after the theft, L.G. appeared nervous and was shaking her legs uncontrollably. The Department investigator testified she administered an oral drug test and L.G. tested positive for methamphetamines. The Department investigator testified L.G. initially claimed she tested positive because she was around her father who used methamphetamines, but later admitted she had used methamphetamines a few days earlier.

In September, the trial court heard testimony from L.G.'s probation officer that L.G. violated the terms of her probation and was currently being detained. The commission of criminal conduct by a parent may support termination under Subsection E because it exposes the child to the possibility that the parent may be imprisoned. *In re R.A.G.*, 545 S.W.3d 645, 650–52 (Tex. App.—El Paso Jan. 11, 2017, no pet.) (mem. op.); *In re M.C.*, 482 S.W.3d 675, 685 (Tex. App.—Texarkana 2016, pet. denied). Here, the probation officer testified L.G. had been charged with possession with intent to distribute 500 grams or more of cocaine, and as a condition of her probation, she was required to wear a drug patch. The probation officer testified that in July of 2019, L.G. called her twice and told her she had been using methamphetamines. The probation

officer further testified that L.G. tampered with her first drug patch, and her second drug patch tested positive for methamphetamines. As a result, L.G. was arrested in July of 2019 and when the trial court signed the termination order, she was detained at a federal detention center awaiting transfer to an in-patient treatment program.

The evidence shows that even though L.G. was seeking in-patient drug treatment, she abused drugs for the past fifteen years and used drugs while caring for D.A.B. and after D.A.B.'s removal. And although L.G. argues this evidence did not involve D.A.B.'s living environment or harm D.A.B., we disagree because the "environment" referred to in subsections D and E refers to L.G.'s conduct, which subjected D.A.B. to the potential of danger that L.G. consciously disregarded. *See In re S.R.*, 452 S.W.3d at 361–61; *In re S.M.L.*, 171 S.W.3d at 477. Accordingly, after viewing all the evidence, including any disputed or contrary evidence in the light most favorable to the trial court's judgment, we conclude the evidence is legally and factually sufficient to support the trial court's termination findings under subsections D and E as to L.G. *See In re J.O.A.*, 283 S.W.3d at 345; *In re J.F.C.*, 96 S.W.3d at 266.

### *A.B.*

A.B. argues he did not knowingly place D.A.B. in conditions that endangered her physical and emotional well-being or engage in such conduct. A.B. asserts he did not know L.G. exposed D.A.B. to an environment that endangered her well-being, and his failure to act is not sufficient evidence to support termination under grounds D or E. We disagree.

The Department produced evidence that A.B. exposed D.A.B. to an environment involving drug use. *See In re S.R.*, 452 S.W.3d at 360; *see also In re J.O.A.*, 283 S.W.3d at 345. The Department caseworker and investigator testified that when the Department removed D.A.B. from A.B.'s care, A.B. was under the influence of methadone. The Department investigator also testified that when she visited L.G. and A.B. about one week after the theft, A.B. was visibly under

the influence of illegal drugs. The Department investigator testified A.B. was slurring his words and tested positive for methamphetamines and amphetamines. Additionally, A.B. admitted he had a problem with methamphetamines and that he used methamphetamines with L.G. while caring for D.A.B. A.B. also testified he knew using drugs while caring for D.A.B. was dangerous.

In addition to A.B.'s drug use, the Department presented evidence that A.B. was incarcerated at the time of trial and had a history of criminal charges. *See In re R.A.G.*, 545 S.W.3d 645 at 650–52. The Department caseworker testified A.B. was the perpetrator of the theft incident, was arrested as a result, and D.A.B. was present during the commission of the theft. According to the caseworker, A.B. was on probation for a possession of a controlled substance charge, and violated his probation when he committed the theft.

When reviewing the evidence in the light most favorable to the judgment, we conclude the Department produced clear and convincing evidence that A.B. "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child … [and] engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child . . . ." *See* TEX. FAM. CODE § 161.001(b)(1)(D), (E). Having determined the evidence was sufficient to support the predicate grounds, we turn our attention to L.G.'s and A.B.'s best interests challenges.

### *Best Interest*

There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d at 97. In determining whether the Department satisfied this burden, the legislature has provided several factors for courts to consider

regarding a parent's willingness and ability to provide a child with a safe environment.[3] TEX. FAM. CODE ANN. § 263.307(b). Courts may also apply the list of factors promulgated by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[4]

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). Additionally, evidence that proves a statutory ground for termination is probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Finally, "[a] trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

---

[3] These factors include, inter alia: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department or other agency; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE ANN. § 263.307(b).

[4] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

*Application*

*L.G.*

In support of her assertion that the evidence is legally and factually insufficient to support the trial court's best interest finding, L.G. asserts that prior to her current incarceration, she was complying with her service plan and properly caring for her younger child, L.B., who is not part of this appeal. L.G. further argues that she produced evidence that she was maintaining a safe and stable environment and surrounding herself with a support system. Therefore, according to L.G., termination of her parental rights was not in D.A.B.'s best interest.

In contrast, the Department presented evidence that L.G. is struggling with drug addiction and unable to provide a stable home for D.A.B. When the Department became involved with the family, L.G. was under the influence of methadone while caring for D.A.B. The Department investigator also testified that when she met with L.G. about one week after the theft, L.G. was visibly under the influence and tested positive for methamphetamines. L.G. also admitted she had used methamphetamines several days prior. Also, the Department caseworker, investigator, and L.G.'s probation officer each testified L.G. admitted to using drugs during the course of the termination proceeding. And, L.G.'s probation officer further testified L.G. tested positive in July of 2019 for methamphetamines. This court has recognized that a parent's drug use can support a best interest finding because the trial court could have reasonably determined that L.G. was unable to properly care for D.A.B. *See In re A.Y.C.*, No. 04-18-0016-CV, 2018 WL 2694761, at *3 (Tex. App.—San Antonio June 6, 2018, pet. denied) (mem. op.) (reasoning parental drug use reflects poor judgment and inability to adequately care for child).

The Department also presented evidence that L.G.'s drug addiction caused her to develop a criminal history, which included charges for possession of drugs. Again, this court has recognized that "[a] parent's inability to maintain a lifestyle free from arrests and incarcerations is

relevant to a best interest determination." *In re X.J.L.*, No. 04-17-00466-CV, 2017 WL 4655102, at *3 (Tex. App.—San Antonio Oct. 18, 2017, no pet.) (mem. op.). L.G.'s probation officer confirmed L.G. was sentenced to four years of supervised release after being convicted of possession with intent to distribute cocaine. The probation officer testified that as a condition of her probation, L.G. was required to refrain from criminal activity, and L.G. violated her probation both when she was arrested for the and when she tested positive for methadone and methamphetamines. The probation officer testified that if L.G. violates her probation again, she could face incarceration of up to 24 months.

In addition to L.G.'s drug use and history of arrests, the Department also produced evidence that L.G. was unable to fully comply with her service plan. A parent's inability to comply with her service plan supports a best interest finding. *In re A.Y.C.*, 2018 WL 2694761, at *3. In this case, the service plan required L.G. to obtain stable employment. The Department caseworker testified that although L.G. sought employment at a restaurant after the Department became involved, she was unable to maintain her job due to her repeated absences. The Department caseworker testified L.G. had difficulty finding childcare and got sick. According to the Department caseworker, though, L.G. worked a total of three weeks during the seventeen months this case was pending.

Finally, the Department presented evidence that D.A.B. has spent the majority of her life with her current foster family and is bonded with them. When a child is too young to express her desires—as D.A.B., who was three years old at the time of trial, is—the trial court may consider that the child has bonded with the foster family, is well cared for by them, and has spent minimal time with the parent. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Here, the foster mother testified that she cared for D.A.B. for approximately nine months when she was first removed from her parents, and for the past fourteen months. The foster mother

testified that when she received D.A.B. from L.G.'s family member, she was dirty and had a severe diaper rash, so she immediately took D.A.B. to the doctor to get medication.

She also testified that D.A.B. is adjusting well and bonding with her and her family. *See id.* She testified that D.A.B. calls her "mom" and her partner "dad." She also testified that her three children and D.A.B. play together like siblings, and D.A.B. refers to those children as her siblings. The entire foster family has accepted D.A.B. as part of the family. The foster mother believes it is in D.A.B.'s best interest to remain with her, and she plans to adopt D.A.B. if L.G.'s and A.B.'s parental rights are terminated.

L.G., however, points out she was complying with her service plan because she attended scheduled visitations and was currently seeking in-patient drug treatment. L.G. further argues she could care for D.A.B. because she was currently caring for her other child, L.B., and D.A.B.'s bond with her foster family is not sufficient evidence to support a best interest determination. This court has recognized that "the best interest standard does not permit termination of parental rights merely because a child might be better off living elsewhere." *In re A.H.*, 414 S.W.3d 802, 807 (Tex. App.—San Antonio 2013, no pet.). Here, though, the trial could have formed a firm belief or conviction that termination of L.G.'s parental rights was in the best interests of D.A.B. because, with her foster family, unlike with L.G., D.A.B's home environment was stable and free from exposure to drugs or crime. *See In re J.F.C.*, 96 S.W.3d at 266; *In re S.L.M.*, 513 S.W.3d at 750. We therefore overrule L.G.'s arguments to the contrary and hold that legally and factually sufficient evidence supports the trial court's finding, by clear and convincing evidence, that termination of L.G.'s parental rights was in the best interests of D.A.B. *See In re S.L.M.*, 513 S.W.3d at 750.

***A.B.***

To the extent A.B. challenges the sufficiency of the evidence supporting the trial court's best interest finding, his brief does not contain any record references or citations to legal authority as required by Rule 38.1 of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 38.1(i) (requiring briefs to contain clear and concise argument with appropriate citations to legal authorities and the record). An issue not supported by legal authority or record references is waived. *In re D.S.*, 76 S.W.3d 512, 516 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Accordingly, we hold A.B. has failed to adequately brief—and has therefore waived—any sufficiency challenge supporting the trial court's best interest finding as to the termination of his parental rights. *See id*.

## CONCLUSION

Based on the foregoing, we affirm the trial court's order of termination.

Beth Watkins, Justice