

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00436-CV

**IN THE INTEREST OF N.N.C.** and G.L.N., Children

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-PA-02273
Honorable Susan D. Reed, Judge Presiding[1]

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Luz Elena D. Chapa, Justice
Irene Rios, Justice

Delivered and Filed: February 24, 2021

AFFIRMED

Appellants Trey, father of N.N.C., and Doug, father of G.L.N., appeal the trial court's order terminating their parental rights to their children.[2]  Both fathers challenge the legal and factual sufficiency of the evidence to support the trial court's findings that termination is in their children's best interests.  *See* TEX. FAM. CODE ANN. § 161.001(b).  We affirm.

## BACKGROUND

The Department became involved with the children after receiving a referral that N.N.C. was not receiving proper medical care and the children were living in a motel and being exposed to drug activity and domestic violence.  On October 4, 2018, the Texas Department of Family and

---

[1] Senior District Judge, sitting by assignment.
[2] To protect the identities of the minor children in this appeal, we refer to appellants by a pseudonym first name and the children by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

Protective Services ("the Department") filed a petition to terminate Trey's and Doug's parental rights to N.N.C. and G.L.N. On August 14, 2020, the trial court held a bench trial, at which the Department caseworker and the children's mother ("Mother") testified. At the time of trial, N.N.C. was nine years old and G.L.N. was six years old. Following trial, the trial court signed an order terminating Trey's parental rights to N.N.C. and Doug's parental rights to G.L.N. For Trey, the trial court found two statutory grounds for termination: (1) Trey constructively abandoned his child, and (2) he failed to comply with the provisions of a court order that established the actions necessary for him to obtain the return of his child. *See id.* § 161.001(b)(1)(N), (O). For Doug, the trial court found three statutory grounds for termination: (1) Doug constructively abandoned his child, (2) he failed to comply with the provisions of a court order that established the actions necessary for him to obtain the return of his child, and (3) he used a controlled substance in a manner that endangered his child's health or safety. *See id.* § 161.001(b)(1)(N), (O), (P). The trial court also found that termination of Trey's and Doug's parental rights was in the children's best interests. *See id.* § 161.001(b)(2). Trey and Doug appeal.

### STANDARD OF REVIEW

A parent-child relationship may be terminated only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in section 161.001(b)(1) of the Family Code and that termination is in a child's best interest. *Id.* § 161.001(b)(1), (2). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007. We review the legal and factual sufficiency of the evidence under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266–67 (Tex. 2002). Under a legal sufficiency review, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its

finding was true." *Id*. at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id*. Under a factual sufficiency review, we "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*.

Under both standards, "[t]he trial court is the sole judge of the weight and credibility of the evidence[.]" *In re F.M.*, No. 04-16-00516-CV, 2017 WL 393610, at *4 (Tex. App.—San Antonio Jan. 30, 2017, no pet.) (mem. op.). We "must give due deference to a jury's factfindings and should not supplant the jury's judgment with [our] own." *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam).

### BEST INTERESTS

Trey and Doug challenge the sufficiency of the evidence to support the trial court's findings that termination of their parental rights was in their children's best interests. There is a strong presumption that keeping a child with a parent is in a child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, it is equally presumed that "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a). In determining whether a child's parent is willing and able to provide the child with a safe environment, we consider the factors set forth in Texas Family Code section 263.307(b). *See id.* § 263.307(b).

Our best interest analysis is also guided by consideration of the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present

or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See id.*; *accord In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013). The Department is not required to prove each factor, and the absence of evidence regarding some of the factors does not preclude the factfinder from reasonably forming a firm conviction that termination is in a child's best interest, particularly if the evidence is undisputed that the parent-child relationship endangered the safety of the child. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). The focus of our review is whether the evidence, as a whole, is sufficient for the trial court to have formed a firm conviction or belief that termination of the parent-child relationship is in the best interest of the child. *Id.*

### A. Trey

The Department produced evidence that Trey did not provide a stable and safe environment for N.N.C. *See In re T.N.J.J.*, No. 04-19-00228-CV, 2019 WL 6333470, at *7 (Tex. App.—San Antonio Nov. 27, 2019, no pet.) (mem. op.) (highlighting that child's need for stable and safe home is paramount in best interest determination). According to the caseworker, Trey lived in different motels while caring for N.N.C. The caseworker testified that these motels had been reported as being under surveillance for drug sales and activities, and N.N.C had been exposed to inappropriate adults and domestic violence when residing at these hotels with Trey. The trial court also heard testimony from Mother, who is currently caring for N.N.C. Mother testified Trey did not have a stable home and she was concerned that if the trial court did not terminate Trey's parental rights, she would not know where to find N.N.C. when he was staying with Trey. Based on this evidence,

the trial court could have reasonably determined Trey's unstable lifestyle would subject N.N.C. to a life of uncertainty and instability. *See In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (recognizing a child's need for stable, permanent home as paramount consideration in best interest determination); *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *5 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.) (parent's failure to obtain and maintain stable housing subjected children to life of uncertainty and instability).

The evidence also shows Trey did not comply with his service plan requirements. The caseworker testified that Trey failed to engage in or to complete any of his court ordered services, which required him to engage in counseling and complete parenting and family violence classes, a drug assessment, and a psychological assessment. *See In re I.L.G.*, 531 S.W.3d 346, 355–56 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (pointing out parent's failure to comply with court ordered service plan goes to best interest determination). Specifically, the caseworker testified that Trey refused to submit to drug testing. Based on this testimony, the trial court could have reasonably determined that Trey's failure to comply with his service plan requirements indicates that he did not have the motivation or willingness to take advantage of the services offered to him by the Department, casting doubt on his parenting abilities. *See id.*; *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *see also* TEX. FAM. CODE ANN. § 263.307(b)(10), (11) (courts may consider willingness and ability of parent to seek out, accept, or complete counseling services and willingness and ability of the parent to effect positive environmental and personal changes within reasonable time period); *Holley*, 544 S.W.2d at 371–72.

The Department also presented evidence that Trey has not had any contact with N.N.C. since September of 2019. A parent's lack of contact with his child supports a best interest finding.

*See In re R.A.G.*, 545 S.W.3d 645, 654 (Tex. App.—El Paso 2017, no pet.). The caseworker testified that Trey initially participated in visits with N.N.C. but has not participated in a visit since September 2019. Since then, she has been unable to locate Trey. She specified that he did not live at any of the addresses he provided to her as his residence, and he did not respond to any of the letters she sent him. She further testified she attempted to contact him by phone and through social media, but she was not successful. Her last attempt was made in July—one month before trial. Finally, she testified that Trey has not contacted her or attempted to provide for the care and support of N.N.C. during the pendency of this case.

The Department also presented evidence that N.N.C. is thriving in his current placement with Mother and that both Mother and N.N.C. are getting the services they need, such as family counseling and behavioral therapy. *See Holley*, 544 S.W.2d at 372 (considering plans for children by those seeking custody in best interest analysis). According to the caseworker, N.N.C. prefers to be in Mother's care, is not bonded to Trey, and does not want to have visits with Trey because Trey "would promise things and wouldn't show up." *See id.* (including the children's desires as best interest factor).

After reviewing the evidence in the light most favorable to the trial court's finding, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of Trey's parental rights was in the best interest of N.N.C. *In re J.F.C.*, 96 S.W.3d at 266. Moreover, after reviewing all the evidence, we conclude the evidence contrary to the trial court's finding is not so significant that a factfinder could not have formed a firm belief or conviction in favor of that finding. *In re J.O.A.*, 283 S.W.3d at 345. Therefore, we hold the evidence is legally and factually sufficient to support the trial court's finding that termination of Trey's parental rights was in N.N.C.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

**B. Doug**

According to the record, one reason for removal was illegal drug use by Doug. According to the caseworker, at the beginning of the case, Doug completed a drug assessment, which recommended that he complete outpatient drug treatment; however, Doug was unsuccessfully discharged because he did not participate in the treatment. As recent as May of 2020, Doug tested positive for hydrocodone and hydromorphone and failed to provide proof that he was under a physician's care when the caseworker requested it. Doug also failed to submit hair follicles for additional drug tests. *See In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San Antonio Dec. 11, 2019, pet. denied) (mem. op.) (trial court could infer parent's drug abuse from parent's failure to submit to drug testing). When asked whether she had personal knowledge that Doug currently used illegal substances, the caseworker testified Doug admitted "he had messed up and that he was doing things he wasn't supposed to do." Accordingly, a trial court could have reasonably determined Doug was using drugs, and Doug's drug use impacts several *Holley* factors. *See Holley*, 54 S.W.2d at 372; *In re A.N.*, No. 04-19-00584-CV, 2020 WL 354773, at *3 (Tex. App.—San Antonio Jan. 22, 2020, no pet.) (mem. op.) (a parent's drug use is relevant to multiple *Holley* factors). Drug use supports a finding that a parent engages in conduct that endangers the physical and emotional well-being of his children. *See In re K.J.G.*, 2019 WL 3937278, at *5. It also suggests inadequate parenting skills and that a parent cannot provide his child with a safe and stable home. *See In re T.N.J.J.*, 2019 WL 6333470, at *5; *In re D.D.M.*, No. 01-18-01033-CV, 2019 WL 2939259, at *7 (Tex. App.—Houston [1st Dist.] July 9, 2019, no pet.) (mem. op.); *see also In re A.H.L.*, No. 01-16-00784-CV, 2017 WL 1149222, at *5 (Tex. App.—Houston [1st Dist.] Mar. 28, 2017, pet. denied) (mem. op.) (parent's drug use may indicate instability, exposing risk of exposure to a parent's impairment or possible incarceration).

The trial court also heard testimony that Doug did not complete his service plan requirements. Doug was court-ordered to complete counseling, psychological services, and a drug assessment. As indicated above, Doug completed his initial drug assessment but did not participate in the recommended outpatient treatment. The caseworker also testified she set up counseling services for Doug, but he did not attend any sessions. *See Holley*, 544 S.W.2d at 372; *see also In re J.M.T.*, 519 S.W.3d at 270 (failure to complete required services to regain possession allows fact finder to infer that parent lacks motivation to seek resources now or in future). The caseworker also testified that Doug did not consistently attend visits with G.L.N. and has not participated in a visit with G.L.N. since August 2019. *See In re R.A.G.*, 545 S.W.3d at 654. According to the caseworker, Doug provided various excuses for missing visits, stating that he either forgot or was not feeling well.

The trial court also heard testimony from the caseworker about Doug's extensive criminal history including his prior arrests for assault on a security guard, possession of dangerous drugs, driving while intoxicated, and theft of property. *Cf. In re F.M.E.A.F.*, 572 S.W.3d 716, 732 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (repeated violations of the law and imprisonment support finding that termination is in best interest of child). Mother testified about Doug's violent tendencies and prior threats to take G.L.N. She testified she sought a protective order against Doug, but it was denied; however, she plans to try again. Recently, she blocked Doug on social media, but he continues to use different pages to try to contact her. She testified that she fears for the safety of G.L.N. if he is under Doug's care. *See In re R.R., Jr.*, 294 S.W.3d 213, 237 (Tex. App.—Fort Worth 2009, no pet.) (considering father's long history of domestic violence). There is also evidence that Doug does not have a home and has failed to maintain stable housing. *See In re L.G.R.*, 498 S.W.3d at 205.

Finally, as it did with N.N.C., the Department presented evidence that G.L.N. prefers to remain in Mother's care, does not want to have visits with Doug, is thriving in his current placement, and is receiving the family counseling and behavioral therapy he needs. *See Holley*, 544 S.W.2d at 372; *see also* TEX. FAM. CODE ANN. § 263.307(b)(5).

After reviewing the evidence in the light most favorable to the trial court's finding, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of Doug's parental rights was in G.L.N.'s best interest. *In re J.F.C.*, 96 S.W.3d at 266. Moreover, after reviewing all the evidence, we conclude the evidence contrary to the trial court's finding is not so significant that a factfinder could not have formed a firm belief or conviction in favor of that finding. *In re J.O.A.*, 283 S.W.3d at 345. Therefore, we hold the evidence is legally and factually sufficient to support the trial court's finding that termination of Doug's parental rights was in G.L.N.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

## CONCLUSION

We affirm the trial court's order.

Rebeca C. Martinez, Chief Justice